**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 507, IBT, ) ) | CASE NO. 1:10-cv-01478 |
| Plaintiff, ) ) | |
| v. ) ) | MAGISTRATE JUDGE NANCY A. VECCHIARELLI |
| AMERICAN RED CROSS BLOOD SERVICES, NORTHERN OHIO REGION *et al.*, ) ) ) ) | |
| Defendants. ) | **MEMORANDUM OF OPINION** Doc. Nos. 22, 24 |

This case is before the undersigned Magistrate Judge by consent. Before the Court are Defendants American Red Cross Blood Services, Northern Ohio Region's ("the Region") and the American Red Cross's (collectively "Defendants"), and Plaintiff Teamsters Local Union No. 507, IBT's ("Local 507"), cross-motions for summary judgment. (Doc. Nos. 22, 24.) The parties oppose one-another's motions.[1] (Doc. Nos. 26, 27.) The parties dispute whether Local 507's grievance challenging the American Red Cross's decision to close new bargaining unit employees from participation in the

---

[1] The Court construes Defendants' reply brief (Doc. No. 27) as an opposition to Local 507's motion for summary judgment.

American Red Cross National Retirement System ("Retirement System") is subject to arbitration.  For the reasons set forth below, the Court GRANTS Local 507's motion for summary judgment, DENIES Defendants' motion for summary judgment, and finds that Local 507 may proceed with arbitration on that portion of its grievance challenging the American Red Cross's decision to close new bargaining unit employees from participation in the Retirement System.

**I.**

The parties do not dispute to the relevant facts of this case and agree as to the nature of the central issue of the case.

Local 507 is an unincorporated labor organization affiliated with the International Brotherhood of Teamsters, maintaining its principal office in Cleveland, Ohio.  The American Red Cross is a federally chartered corporation.  The Region is a local unit of the American Red Cross operating and existing under the laws of the state of Ohio and having its principal place of business in Cleveland, Ohio.  Local 507 and the Region entered into a collective bargaining agreement ("the CBA") effective January 21, 2007, through May 1, 2011.  Among other things, the CBA certifies Local 507 as the exclusive representative of a bargaining unit of workers employed by the Region.

The CBA provides a general method of remedying certain disputes between the parties to the CBA.  Article 6 of the CBA is titled "Grievance Procedure and Arbitration" and provides that the resolution of "any controversy or difference . . . between the Union and the Employer, or between any employees and the Employer, with respect to the interpretation or effect of [the] Agreement with regard to the rights, obligations, or liabilities of the parties hereunder or otherwise," shall initially be pursued through an

internal grievance procedure. (CBA Art. 6, Compl., Ex. A, p. 5.) Article 6 further provides that "In the event the grievance is not settled or otherwise adjusted in the . . . grievance [procedure], the Union shall have the right to submit the grievance to arbitration." (*Id.* at 6.) The described grievance procedure must be followed properly for the dispute to be eligible for arbitration. (*Id.* at 6-7.)

Article 24 of the CBA addresses the retirement benefits enjoyed by members of the collective bargaining unit:

> **ARTICLE 24. RETIREMENT BENEFITS & SAVINGS PLAN**
>
> The bargaining unit employees will continue to participate in the American Red Cross National Retirement System and ARC National Savings Plans (i.e. , 401K and 403-B), as amended from time to time at the sole discretion of the American Red Cross. The parties agree that any changes or amendments to the plan automatically apply to the bargaining unit employees to the same extent that such changes or amendments apply to the non-bargaining unit employees. The Region, the Union and the employees are bound by the terms of the plan, and issues regarding the plan shall not be subject to the grievance or arbitration provisions.

(CBA Art. 24, Compl., Ex. A, p. 22.) The Retirement System is a defined benefit pension plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001 *et seq*. ("ERISA"). (Ret. Sys. of the Am. Nat'l Red Cross: Rules and Regs., Pl.'s Mot., Ex. A, § 1.1, p. 1.) The ARC National Savings Plans are separate, defined contribution plans. (Pl.'s Mot. 5.)

When Local 507 and the Region negotiated the CBA in 2007, the trust document for the Retirement System defined participation in Section 3.1(a) as follows:

> Each Member on June 30, 2005 who remains employed as of July 1, 2005 shall continue to participate in the System. Any other Employee shall become a Member in the System on the first day of the month coincident with or next following the date he becomes an Eligible Employee.

3

(Ret. Sys. of the Am. Nat'l Red Cross: Rules and Regs., Pl.'s Mot., Ex. A, § 3.1(a), p. 14.) The trust document permitted the American Red Cross to amend the Retirement System at any time. (*Id.* at 71; *see also* Summ. Plan Description, Defs.' Mot., Ex. B, p. 39.)

In April 2009, the American Red Cross amended the Retirement System to provide that, effective July 1, 2009, it would close participation in the Retirement System to bargaining unit employees hired on or after July 1, 2009. (3d Amend. to the Ret. Sys. of the Am. Nat'l Red Cross, Defs.' Mot., Ex. C.) Employees hired on or after July 1, 2009, would instead participate in an enhanced 401(k) plan. (Pl.'s Mt. 6.) Bargaining unit employees hired before that date and retired employees were not affected by this change. (3d Amend. to the Ret. Sys. of the Am. Nat'l Red Cross, Defs.' Mot., Ex. C.)

On April 23, 2009, Local 507 filed a grievance that included a challenge to the amendment to the Retirement System closing new bargaining unit employees from participation in the Retirement System. The Region denied the grievance, and Local 507 filed a notice of intent to arbitrate. The Region refused to arbitrate that portion of the grievance dealing with the amendment to the Retirement System. The Region has implemented the amendment at issue and has not permitted the approximately 20 employees hired on or after July 1, 2009, to participate in the Retirement System.

On July 2, 2010, Local 507 filed a complaint pursuant to the Labor-Management Relations Act of 1947 ("LMRA"), § 301, 29 U.S.C. § 185, alleging a breach of the CBA. The complaint seeks to enforce the Article 6 arbitration provision in the CBA against the Region and the American Red Cross.

## II.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. See Cox v. Ky. Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995). The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves," id., or by any other evidentiary material admissible at trial, Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993). See also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, 10A, § 2721 (1998). Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 888-89 (1990).

The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476

(6th Cir. 1989). That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)). The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment. *Reeves v. Fox Television Network*, 983 F.Supp. 703, 709 (N.D. Ohio 1997).

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966). In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.* This includes taking the nonmoving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant. *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974). However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

6

**III.**

The parties agree that the sole issue to be determined by the Court is whether the part of Local 507's grievance challenging the American Red Cross's decision to close new bargaining unit employees from participation in the Retirement System should be arbitrated. (Stip. at 2.) It is not disputed that members of Local 507 have taken the steps required to trigger the arbitration clause in Article 6 of the CBA. The parties also agree that federal labor law governs this matter. (Defs.' Mot. at 7; Pl.'s Mot. at 7.) For the following reasons, the Court finds that Local 507's grievance may be arbitrated.

Courts consider four "guiding principles" when determining whether parties must arbitrate: "(1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *U. Steelworkers of Am. v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648-51 (1986)). Furthermore, "in cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable,' and only an express provision

7

excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id.* (quoting *AT&T Techs., 475 U.S. at 650*).

Defendants concede that the arbitration clause in Article 6 is broad and, therefore, that it is their burden to establish either: (a) an express provision excluding Local 507's grievance from arbitration, or (b) "most forceful evidence" of a purpose to exclude Local 507's grievance from arbitration. (Defs.' Mot. at 9.) The Court concludes that Defendants have failed to show both.

Defendants argue that Article 24's provision that "issues regarding the plan shall not be subject to the grievance or arbitration provisions" expressly excludes Local 507's grievance from arbitration. Defendants' interpretation of Article 24 is as follows:

(1) The term "the plan" as used in Article 24 refers to the Retirement System as well as the National Savings Plans;

(2) The phrase "issues regarding the plan" includes issues regarding the *terms* of the Retirement System because the phrase is immediately preceded by the language "The Region, the Union and the employees are bound by the terms of the plan";

(3) Accordingly, Article 24 can be understood to mean, in part, that issues regarding *the terms of the Retirement System* shall not be subject to the CBA's grievance or arbitration provisions;

(4) The American Red Cross's decision to close participation in the Retirement System is an issue regarding the terms of the Retirement System; therefore,

(5) The American Red Cross's decision to close participation in the Retirement System shall not be subject to the CBA's grievance or arbitration provisions.

However, if a provision upon which a party relies to exclude a dispute from arbitration is equally consistent with opposing interpretations, and the language

8

employed does not clearly and unambiguously describe the issue or issues excluded from arbitration, the provision's language cannot be said to *expressly exclude* that issue.  See *Int'l Assoc. of Machinists & Aerospace Workers v. ISP Chems., Inc.*, 261 F. App'x 841, 847 (6th Cir. 2008); *U. Steelworkers of Am. v. Century Aluminum of Ky.*, 157 F. App'x 869, 873 (6th Cir. 2005) (quoting with approval *U. Steelworkers of Am. v. Lukens Steel Co.*, 969 F.2d 1468, 1476 (3d Cir. 1992)).

Local 507 contends that Article 24's provision that "The bargaining unit employees will continue to participate in the American Red Cross National Retirement System":  (1) plainly grants bargaining unit employees a *right* to participate in the Retirement System; and (2) Article 6's arbitration provision allows Local 507 to arbitrate their grievance because the grievance constitutes a controversy or difference respecting the interpretation or effect of the CBA with regard to that right to participation.  Local 507 continues that an interpretation of Article 24 to exclude from arbitration challenges to changes or amendments regarding participation in the Retirement System would be absurd because such an interpretation would render the provision securing participation an illusory promise.

Both parties' interpretations of Article 24 have some merit; that is, Article 24 is equally consistent with the parties' opposing interpretations.  Moreover, the exclusionary language "issues regarding the plan shall not be subject to the grievance or arbitration provisions" does not clearly and unambiguously exclude from arbitration the particular issue of participation in the Retirement System.  Therefore, Article 24 cannot be said to expressly exclude from arbitration the issue of participation in the

9

Retirement System.

Defendants also argue that Article 24's provision granting the American Red Cross the sole discretion to amend the Retirement System is "most forceful evidence" of a purpose to exclude Local 507's grievance from arbitration.  Defendants contend that it would be absurd to understand the CBA to require the Region to engage in a grievance process to remedy challenges to amendments to the Retirement System because the Region does not have the power to amend the Retirement System.  However, Defendants cite no case law in support of this argument, and offer no evidence or explanation of how the grievance process delineated in the CBA would be futile or otherwise be a meaningless formality when addressing grievances such as Local 507's.  Therefore, the Court is not persuaded that the provision in Article 24 giving the American Red Cross sole discretion to amend the Retirement System is "most forceful evidence" of a purpose to exclude grievances pertaining to plan participation from arbitration.

Defendants have failed to show an express provision excluding Local 507's grievance from arbitration, and have failed to show "most forceful evidence" of a purpose to exclude Local 507's grievance from arbitration.  Therefore, the Court cannot conclude with positive assurance that the arbitration clause in Article 6 is inapplicable to Local 507's grievance.  As the Court must resolve all doubts in favor of arbitration, the Court concludes that Local 507's grievance challenging the American Red Cross's decision to close new bargaining unit employees from participation in the Retirement System is subject to arbitration.  Accordingly, the Court grants Local 507's motion for summary and denies Defendants' motion for summary judgment.

**IV.**

For the foregoing reasons, the Court GRANTS Local 507's motion for summary judgment, DENIES Defendants' motion for summary judgment, and finds that Local 507 may proceed with arbitration on that portion of its grievance challenging the American Red Cross's decision to close new bargaining unit employees from participation in the Retirement System.

**IT IS SO ORDERED.**

s/ <i>Nancy A. Vecchiarelli</i><br>UNITED STATES MAGISTRATE JUDGE

Date: May 18, 2011